ANERIO V. ALTMAN, ESQ #228445
LAKE FOREST BANKRUPTCY
27031 VISTA TERRACE #209
LAKE FOREST, CA 92630
PHONE: (949) 218-2002; FAX: (949) 325-1171

Attorney for DEBTORS
MARK AND JENNIFER FITTER

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| IN RE: MARK AND JENNIFER FITTER | CASE NO.: 8:08-bk-13097-RK |
| | ADV. NO.: 8:10-ap-01296-RK |
| MARK AND JENNIFER FITTER<br>  PLAINTIFFS AND DEBTORS, | CHAPTER 7 |
| v. | OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD CAUSE OF ACTION OF PLAINTIFFS' COMPLAINT |
| BANK OF AMERICA, N.A.;<br>COUNTRYWIDE HOME LOANS<br>  DEFENDANTS AND CREDITORS | |
| | **JUDGE:**<br>ROBERT KWAN |
| | **CHAPTER 7 TRUSTEE**<br>JOHN WOLFE |
| | Date:    September 7, 2010<br>Time:    3:30 P.M.<br>Courtroom: 5D |

OPPOSITION
1

PLAINTIFFS MARK AND JENNIFER FITTER ("Plaintiffs", "Respondents", "Debtors") oppose MOVANTS BANK OF AMERICA, N.A. and COUNTRYWIDE HOME LOANS' motion to dismiss the Plaintiffs' third cause of action for Intrusion Into Seclusion ("Defendants", "Movants") as follows:

## I. INTRODUCTION

Debtors Mark and Jennifer Fitter are entitled, by order of the court, to move on with their lives following their discharge in Bankruptcy Court in 2008. The Debtors filed their Bankruptcy Case, publically declared they were bankrupt, dealt with the unavoidable ignominy of the process and received the approval of the court that their debts were now discharged.

Defendants in a broad spectrum and amazingly multi-pronged multi-media campaign continued to collect upon these discharged debts, by written, telephonic and "texting" methods in a blind, deaf and dumb manner. Plaintiffs at first ignored the financial behemoth, waited for the blind goliath to notice their bankruptcy filing, and finally were required to request on the phone on more than one occasion for the communications to stop.

Nothing has stopped, and as of the date of filing this very motion, these communications continue.

Plaintiffs sued in an attempt to stop these actions and for damages for continuing to deal with their legally allowable but unfortunately publically embarrassing decision. The contested cause of action in this matter is their cause of action under California Law for Intrusion Upon Seclusion. Defendants contest the viability of this cause of action based on the facts alleged by the Plaintiffs.

## II. CALIFORNIA'S TORT OF INTRUSION INTO SECLUSION

The California Tort of Intrusion into Seclusion utilizes a two part test to determine whether an act in question constitutes a tort.

The first part of the test to determine whether there is a viable cause of action for California's Tort of Intrusion Into Seclusion is that the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[1]. The second part of the test is to determine that the intrusion must occur in a manner highly offensive to a reasonable person.[2]

The nature of the communications is critically important to this discussion. Communications that are commonplace, expected, and permissible are obviously not ones that fall into the category of an impermissible communication. Further, Plaintiffs recognize that the Defendants have not employed espionage techniques or devices in attempting to contact the Debtors and so do not focus on the tort's

---

[1] Hernandez v. Hillsides, Inc. (2009) 47 Cal. 4th 272, 286 quoting Shulman v. Group W Productions, Inc. (1998), 18 Cal.4th 200

[2] Id.

OPPOSITION
3

language regarding covert methods of communication. Neither of these extremes are at issue.

In between mildly annoying communications and full bore invasions, the California Tort of Intrusion into Seclusion recognizes communications that are, at their core, offensive, improper and intrusive, and not just surreptitious or covert, as sufficiently offensive to sustain a viable cause of action.[3]

Plaintiffs have asserted that directed communications to the Debtors specifically on the collection of a stayed debt are more than just inappropriate; They would be clearly illegal. Defendants even recognize that some of the communications received by the Plaintiffs <u>could</u> be considered attempts to collect upon clearly enjoined debts.[4]

California employs a test to determine the appropriateness of the communication. The California Court in <u>Sanders v. American Broadcast Company</u>[5] considered three factors: (1) The identity of the intruder; (2) the extent to which other persons had access to the subject place, and could see or hear the plaintiff; and (3) the means by which the intrusion occurred.

This analysis as applied to this case, clearly shows that the communications alleged by the Plaintiffs were not appropriate.

---

[3] Id.; Shulman v. Group W. Productions, Inc. (1998) 18 Cal. 4th 200.

[4] Defendant's Motion page 5 lines 5 through 18.

[5] Sanders v. American Broadcasting Companies (1999), 20 Cal.4th 907

In this case, the identity of the intruder is an entity prohibited by Federal Law from contacting the Debtors for the purpose of collecting upon a pre-petition debt. Both Bank of America, and/or Countrywide Home Loans, were and are creditors of the Debtors' bankruptcy estate whose debts were discharged. This factor supports the Plaintiffs argument.

The second prong, the extent to which other persons had access to this place, is best applied by not by using a generic third party for the analysis of access allowed, but rather, should look at the access granted to fellow discharged creditors that had access to the Debtors. In other words, the question should be "what was the extent to which other persons <u>who did not have a legal right</u> to access the Debtors could access the debtors" or "to what extent could entities legally contact the Debtors." No discharged creditor was barred from offering new credit or services to the Debtors, but all discharged creditors were barred from attempting to collect upon the pre-petition debt. Defendants contacts, as alleged, were illegal and thus they did not have access. The regulation of these communications is a bright line feature of the protection provided by the Automatic Stay.

The third prong, the means used for the intrusion, is an irrelevant consideration here, since no form of communication was acceptable if the topic of the communication concerned the collection of the pre-petition debt.

Finally, for the purpose of the first part of this test, we must presume at all times, that the facts alleged by the Plaintiff are true such that the communications received <u>were</u> for the purpose of collecting a pre-petition debt, that these specific communications <u>were</u> of a subject matter that the Defendants were prohibited from discussing with the Plaintiffs, and that Plaintiffs did not waive or allow any communication on this subject.

The second part of California's test for the determination of this existence of this tort is that the intrusion must occur in a manner highly offensive to a reasonable person.[6]

This consideration is normally a public policy issue to be evaluated by the court. Defendants assert that continued illegal actions taken by an enjoined party after both court notices have been sent warning the Defendants against taking those actions, and after the Plaintiffs have verbally requested that these actions cease, would be offensive to a reasonable person as a matter of policy. The Debtors should be able to rely upon a Federal Injunction as a protection from the enjoined acts.

As a policy consideration, the court must balance the interest of the Plaintiffs against that of the Defendants for the purpose of determining whether public policy should allow these contacts to be considered offensive. The court in <u>Hernandez v. Hillsides</u> described this analysis as follows:

---

[6] Id.

OPPOSITION
6

> "For guidance, we note that this court has previously characterized the "offensiveness" element as an indispensible part of the privacy analysis. It reflects the reality that "[n]o community could function if every intrusion into the realm of private action" gave rise to a viable claim. …Hence, no cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights. In light of such pragmatic policy concerns, a court determining whether this requirement has been met as a matter of law examines all of the surrounding circumstances, including the "degree and setting" of the intrusion and "the intruder's `motives and objectives.'" Courts also may be asked to decide whether the plaintiff, in attempting to defeat a claim of competing interests, has shown that the defendant could have minimized the privacy intrusion through other reasonably available, less intrusive means."[7]

This early in the case, with all facts presumed in favor of the non-moving party, including the purpose of these contacts, it is impossible to say that this type of illegal conduct could be approved by the court as a reasonable public policy.

## III.  DEFENDANT'S DISPUTE INDISPUTABLE FACTS

Defendants spend a great deal of time arguing many of the facts alleged by the Plaintiffs when, for the purpose of a 12(b)(6) motion, the facts are not in question. In any motion to dismiss, the facts are presumed in favor of the non-moving party.[8] Defendants are not foreclosed from asserting any perceived weaknesses in the alleged facts, but such disputes are inappropriate for this motion. Defendants excitement in arguing the facts of this case are better suited for its answer and trial.

---

[7] Hernandez v. Hillsides, Inc., 211 P.3d 1063, 1078.

[8] Davis v. Monroe County Board of Education (1999), 526 U.S. 629, 633.

OPPOSITION
7

Here the facts as alleged by the Plaintiffs are, without question for this motion, that the Defendants contacts were for the purpose of collecting upon a pre-petition debt discharged in the Bankruptcy. These communications were received in three varieties: Telephonic, visual texts and written form.

Defendants spend an inordinate amount of space discussing the content of four letters out of the multiple exhibits presented by the Plaintiffs, recognizing two as actually attempting to collect upon a pre-petition debt.[9]

Defendants casually disregard the descriptions of calls received by the Plaintiffs from Defendants, and ignore the pictures taken of the actual phone messages, texts and statements alleging conversations with the Defendants requesting the communications stop.

All of these arguments are completely irrelevant to this motion. Each and every single communication received by the Debtors, as alleged in the complaint as collection attempts, must be considered collection attempts for the purpose of this motion. Plaintiffs have provided sufficient evidence that must be considered by the court, whether or not the court ultimately agrees with the Plaintiff.

Defendants will have an opportunity to dispute which of the alleged possibly hundred or more communications were and were not attempts to collect a debt, or which of the schizophrenically designed letters both demanded payment and

---

[9] See page 5 of the Defendants' motion lines 5 through 18.

informed the Debtors not to pay constituted collection letters.

For now, for this motion, as alleged, the letters were an attempt to collect a debt, the telephone calls both when the Debtors spoke with the Defendants and when they left messages are presumed to be collection attempts, as were the text messages.

## IV. CONCLUSION

Plaintiffs have demonstrated sufficient facts to support a cause of action for California's Tort of Intrusion into Seclusion and ask that the Defendants' motion be denied.

Dated:08/24/2010　　　　　　　　　　　　　　Respectfully Submitted,


　　　　　　　　　　　　　　　　　　　　　　/S/ ANERIO V. ALTMAN, ESQ.
　　　　　　　　　　　　　　　　　　　　　　Anerio V. Altman, Esq.
　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs
　　　　　　　　　　　　　　　　　　　　　　MARK AND JENNIFER
　　　　　　　　　　　　　　　　　　　　　　FITTER

OPPOSITION
9